### T. W. THORNHILL v. STATE.

No. A-7262. Opinion Filed March 29, 1930.
(287 Pac. 743.)

10

 

N. S. Corn, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was tried in the county court of Dewey county on a charge of having possession of intoxicating liquor, to wit, beer, with the unlawful intent then and there to sell, barter, give away, and otherwise furnish to others, and was sentenced to pay a fine of $50 and be confined in the county jail of Dewey county for a period of 30 days, from which judgment the defendant has appealed to this court.

The defendant filed a demurrer to the information, alleging the information did not state facts sufficient to constitute an offense against the laws of the state of Oklahoma; second, the information does not allege that the beer is a cask or as much as a cask; third, the information alleges possession of 108 pints of beer, which shows on its face it is less than a cask of beer; and, fourth, the evidence will show that it is not beer but home brew, a substitute for beer, and the information does not allege that it contains more than one-half of 1 per cent. of alcohol measured by volume and capable of being used as a beverage. This motion was overruled and the defendant saved an exception. The jury was impaneled, and the state called as a witness C. C. Jones, the substance of whose testimony is as follows: "I was sheriff of Dewey county on the 12th day

of July, 1928; I am acquainted with the defendant T. W. Thornhill." The defendant then objected to any testimony of the sheriff, C. C. Jones, on the same grounds as set forth in his demurrer to the information, which objection was by the court overruled, and the defendant duly excepted. Witness Jones then stated he was at defendant's place on July 12, 1928; "Walter Tower and Marvin Compton was with me; we went there with a search warrant; we found some beer, beer bottles, and jars out there, and brought them to Taloga; the empty bottles and jars have been in the old jail; the janitor has the key to that." The defendant then entered a motion and objection to the court trying said cause on the ground that the court did not have jurisdiction at this time to try the cause as no order was made by the court fixing a time for a November term of court. Testimony was taken on defendant's motion, the court after hearing the same overruled his motion, and defendant excepted.

Witness Jones further testified as to the number of bottles of beer and to the number of empties, and the county attorney then asked the following questions, and he gave the following answers:

"I will ask you, Mr. Jones, to take the cap off that bottle? A. Haven't anything to take it off with.

"Q. Might pull it off on some of this stuff here."

The sheriff takes the cap off the bottle. The county attorney then asks the court to be allowed to pass the beer bottle to the jury, to which the defendant objected, the court overruled the objection and gave the defendant an exception, and the jury taste the contents of the bottle. Witness then stated he had sampled some of the beer and that it was intoxicating. On cross-examination, he thought there were 108 pint bottles. He was then asked the following question:

"Q. That is home brew, is it? A. Some call it beer and some home brew. (The defendant objected, which objection was overruled, and the witness proceeded.) If it was made at home it would be home brew; I drank a bottle of it and that is the way I arrived at the conclusion that it was intoxicating. I did not drink enough of it to feel the effect of it but I have drank beer, Mr. Corn, and I know what beer it. I have drank beer several years ago before prohibition."

The witness further stated defendant told him the empty bottles had been brought to his house by a man by the name of John Boatman; they were brought there for a man at Sharon.

Walter Tower, called as a witness, in substance, stated the same facts as did the witness Jones as to what took place at the defendant's home and what was found there.

At the close of the state's direct testimony, the defendant moved the court for a directed verdict on the ground that the state had failed to show that the law had been violated, and the state's evidence discloses that the alleged intoxicant was not beer but home brew, and there is no testimony showing that it contained more than one-half of 1 per cent. alcohol measured by volume and capable of being used as a beverage, which motion was overruled, and defendant duly excepted.

The defendant called Clark Bowser, whose name appears on the affidavit for the search warrant, and the witness, in substance, stated that the affidavit for the search warrant was not read to him, nor did he know what it contained; that he was working at a threshing machine, and his uncle Marvin Compton and the deputy came out to where he was threshing and took him to town and handed him a paper which he signed, and that the court did not swear him to it. It developed in the testimony it was an affidavit for a search warrant. The deputy

sheriff stated that Clark Bowser stated he did not like to sign the affidavit. The defendant then introduced the affidavit of Clark Bowser in evidence, and stated, in substance, that he had never been convicted of any crime; "my family consists of my wife, five children, and myself;" defendant admitted the stuff found at his house was called home brew; he made it himself, and the stuff they had in the courtroom looked like the stuff he made, and gave the formula he used in making this brew, and stated it was a substitute for beer; the empty bottles had been brought by a man named John Boatman, for some one from Sharon.

On cross-examination, the defendant testified that he had drunk as many as ten or twelve bottles of this drink the officers found in the bottles in a few hours; that he had drunk as many as eight or ten bottles in a space of two hours, and he knew it was not intoxicating.

Marvin Compton was called in rebuttal by the state and stated he was acquainted with Clark Bowser; that some time during the spring he had Clark Bowser in his custody; that he was incarcerated in jail, and the court permitted the witness to testify as to a conversation he had with Clark Bowser while he was in jail, in which conversation Clark Bowser said Marvin Compton told him he knew where Raymond and Paul were getting their beer; he said they were getting it at Tom Thornhill's. Witness further stated he did not read this affidavit to Clark Bowser, and was then permitted over the objection of the defendant to tell of a conversation he had with Clark Bowser in the absence of the defendant. Marvin Compton then stated Clark Bowser signed the affidavit in his presence, and was asked if Judge Wood administered the oath to Clark Bowser, and said: "Well, now, I could not say whether Judge swore him or not."

Witness on cross-examination stated he told Clark Bowser what was in the affidavit, and asked him to sign it, and he said, "I don't much like to do it." "I heard Clark Bowser say the defendant had liquor at his house and was selling and otherwise disposing of it." This statement was objected to by the defendant on the ground that it was incompetent, irrelevant, and immaterial. The court overruled the same. This is, in substance, the testimony in the case.

Several errors are assigned by the defendant as grounds for reversal of this case; the first being the court erred in overruling the demurrer to said information filed in said cause. From an examination of the information, we find it charges:

"That T. W. Thornhill a person at and within the county of Dewey and state of Oklahoma, on or about the 12th day of July, 1928, did then and there unlawfully and wrongfully have in his possession intoxicating liquor to wit: 108 pints of beer, with the unlawful intent then and there on the part of him the said T. W. Thornhill, to sell, barter, give away and otherwise furnish the same in violation of the prohibitory liquor laws of the state of Oklahoma."

The sixth paragraph of section 2563, C. O. S. 1921, provides:

"That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended."

In this case the information clearly and distinctly charges the defendant with possession of intoxicating liquor, to wit, beer; an offense which sufficiently charged to advise the defendant of what he is expected to defend

against. The court did not err in overruling the demurrer of the defendant to the information.

The defendant contends that the court erred in giving instruction No. 2, which instruction is as follows:

"The jury are instructed that the laws of Oklahoma provide that any person may have in his possession one quart of vinous, spirituous or malt liquors for his own use and possession of same shall not be a violation of the law; but that the possession of more than one quart of such liquors at one time shall constitute prima facie evidence of intention on the part of the possessor to dispose of same in violation of law, but such presumption may be overcome by defendant by evidence."

In Rose v. State, 36 Okla. Cr. 333, 254 Pac. 509, in the second paragraph of the syllabus, the court said:

"Under section 1, c. 123, Laws 1923-24, declaring that keeping in excess of a certain amount of intoxicating liquors 'shall be prima facie evidence of an intention to convey, sell or otherwise dispose of such liquors,' it is error to charge that 'it is not incumbent upon the state to prove by other evidence the intent of the defendant to convey, sell or otherwise dispose of such liquors,' in that it places upon defendant the burden of raising a reasonable doubt of his guilty intent. The statute only means to make such evidence competent and sufficient to establish the unlawful intent unless rebutted or the contrary proven, yet it does not make it obligatory upon the jury to convict upon the offering of such proof, whether or not such evidence is sufficient to overcome the presumption of innocence, when all the evidence including the presumptions is considered, is for the determination of the jury."

In Dorsey v. State, 44 Okla. Cr. 7, 279 Pac. 917, in the second paragraph of the syllabus, the court said:

"In this case the possession of the whisky is a disputed fact, and it was error for the court to instruct the jury 'that the keeping in excess or more than one quart

of any spirituous, vinous, fermented or malt liquor, or imitation thereof, or substitute therefor is prima facie evidence of an intent to convey, sell or otherwise dispose of the same; that is, so that there is a presumption of guilt, but that it can be overcome by the defendant by proof that he did have lawful possession,' as it places the burden of proof on the defendant."

We hold that instruction No. 2, complained of by the defendant did not correctly state the law, and the giving of the same, over the objection of the defendant, was prejudicial error. With what intent a person keeps intoxicating liquor is always a question for the jury, to be determined upon the consideration of all the evidence. In the determination of the guilt of the defendant, the jury is required, under the provisions of our statute, to consider the keeping of a certain quantity of intoxicating liquor as prima facie evidence of an unlawful intent to violate the law, but the prima facie evidence may be rebutted by other evidence in this case, whether shown by the evidence on the part of the defendant or by the state in its evidence proving possession. It is the duty of the jury under the law to take into consideration the presumption of innocence of the accused until the contrary is proven beyond a reasonable doubt. It does not change the rule in criminal cases that, before a conviction can be had, the jury must be satisfied from the evidence beyond a reasonable doubt of the affirmative of the issue presented in the information that the defendant is guilty in the manner and form as charged. The last part of instruction No. 2, complained of, places the burden of proof upon the defendant. Other errors are assigned and argued, but we find nothing in the record requiring further discussion. For the reasons stated, the judgment of the lower court is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.